**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TORION SELLERS and RENEE BELL,
*Individually, and on behalf of all
Others similarly situated,*

     Plaintiffs,

                              Case No:

                              216(b) Collective Action

v.

SAGE GROUP PLC;
SAGE SOFTWARE, INC.; and
SAGE PAYMENT SOLUTIONS, INC.,
d/b/a SAGE NORTH AMERICA,

     Defendants.

---

**PLAINTIFFS' COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF
THE FLSA**

---

Plaintiffs Torion Sellers and Renee Bell, individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action within the preceding three years of this action, to and through the date of the final disposition of this action, sue Defendants, Sage Group PLC; Sage Software, Inc., and Sage Payment Solutions, Inc. d/b/a Sage North America (hereinafter referred to collectively as SAGE or Defendants), pursuant to *29 U.S.C. 216(b)*, of the Fair Labor Standards Act (the "FLSA") and state

as follows:

1.    Plaintiffs bring this action for violation of federal wage and hour laws by and on behalf of all similarly situated current and former employees of Defendants.

2.    Pursuant to a national, common policy, and plan, the Plaintiffs and class of similarly situated current and former employees have been given the titles of "Account Executive", "Account Manager", "Consultant", or otherwise held themselves out under variations of these titles used to describe an inside sales representative position, whose primary function was to sell the Defendants' products and services on a non-retail basis to businesses and commercial enterprises.  The Plaintiffs and the class of similarly situated employees were unlawfully not compensated at a rate of one and one half times their regular rates of pay for overtime hours worked yet classified as hourly, non-exempt employees.

3.    Defendants did not maintain any actual system for the purpose of tracking and recording all the time, including minutes and hours the inside sales representatives worked during their term of employment as required of Defendants under the FLSA for non-exempt employees.

4.    Defendants have improperly and willfully withheld

and refused to pay Plaintiffs and all insides sales representatives overtime wages and a premium for overtime hours worked. Defendants' paystubs and pay records demonstrate that Plaintiffs and all inside sales representatives were classified as hourly, non-exempt employees such that Defendants cannot now and should not be able to claim the application of any exemptions, and knew that their actions and conduct of not paying overtime wages was unlawful.

5. Defendants knew or should have known that these inside sales representatives fail the short test for the executive exemption since they do not supervise two or more full time employees, and their primary job duties are none-exempt sales duties and not management. Inside sales representatives are on the production side of the business.

6. Defendants knew or should have known that all of its inside sales representatives do not meet the administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA.

7. Defendants knew or should have known that the

inside sales representatives are clearly not outside sales representatives, and do not meet the § 7(i) exemption as well, clearly not selling retail or retail services.

8.    Defendants have a comprehensive lead generation system such that inside sales representatives do not have to solely rely upon their own contacts and sources to generate sales.

9.    Defendants absolutely know that inside sales representatives routinely worked overtime hours, as managers and supervisors witnessed the extra hours, encouraged and even pressured sales representatives to work as many hours as possible to hit quotas and meet goals. Moreover, the company never asked employees to leave after the shift ended or the employee reached 40 hours and encouraged their sales representatives to work overtime hours.

10.    Defendants have willfully failed to pay Plaintiffs and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA). Specifically, Plaintiffs and similarly situated employees were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid any premium for the overtime hours worked. Plaintiffs and the class of similarly situated employees did not and currently do not perform work

that meets the definition of any exemption under the FLSA, and the Defendant's pay practice are not only clearly unlawful, but UNFAIR as well.

11. In this pleading, the term "Inside Sales Representative" means any employee of Defendants working under the various titles of: "Account Executive", "Business Account Manager", "Account Manager", "Consultants", "Regional Account Executive" or any other title or position used by Defendants to describe workers who perform substantially the same work as an inside sales representative (discovery may reveal additional job titles and employees that should be included). Inside Sales representatives in this class make inbound and/or outbound phone (cold calls) calls, research the internet and either make internet presentations or demonstrations and consummate sales of new products or cloud applications, or obtain renewals for using the software or cloud applications from existing customers.

12. In this pleading, "Defendants" or "SAGE" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein, including SAGE Group PLC (discovery may reveal additional Defendants that should be included).

5

13.   The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion. Plaintiffs reserve all rights to plead in the alternative.

### Jurisdiction & Venue

14.   This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331*, because this action involves a federal questions under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b)*.

15.   This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

16.   This Court has personal jurisdiction over the Defendants, because the Defendants operate substantial business in Lawrenceville, Gwinnett County, and in Atlanta, Fulton County, Georgia and the damages at issue occurred within this District.

17.   Venue is proper to this Court pursuant to 28 U.S.C. §1391(b) because the Parties reside in this district and because a substantial part of the events giving rise to the claims occurred in this District.

18.   The overtime wage provisions set forth in FLSA §207 apply to Defendants, as all Defendants collectively engage in

interstate commerce under the definition of the FLSA.  Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA §203 as a common business enterprise.

### The Parties

#### *Representative Plaintiffs, Torion Sellers and Renee Bell*

19.  Torion Sellers resides in this District in Grayson, Georgia.  He worked for the Defendant Sage Software, Inc. from January 2015 through January 2017 as an inside sales representative from the Defendant's Lawrenceville, Georgia office last working under the title of "Business Account Manager".

20.  When initially hired, Sellers was lead to believe the position was a 40 hour per week job, and that overtime pay was possible.

21.  Sellers was assigned "accounts" lists of existing customers using the company software and cloud applications, and whose responsibility was to make both outbound calling and inbound calls to current and prospective purchasers of SAGE products and to seek renewals of licenses or contracts to use Sage software and cloud applications.

22.  Sellers and Bell were employees of Defendant Sage

Software, Inc. during their time as contemplated by 29 U.S.C. § 203.

23.  Sellers's primary job duty was sales, all of which were conducted within the offices of Defendants, and specifically to sell Sage software products and Cloud applications to business and commercial enterprises and professionals.

24.  Sellers was paid a base hourly rate and classified by SAGE as "NON-EXEMPT" under the FLSA.  He was also eligible for monthly, non-discretionary bonuses or commissions for sales according to a standardized pay structure or plan applicable to all sales representatives.

25.  All inside sales representatives were paid pursuant to the same common pay plan:  a base hourly rate quotes in annual sums to the employees, and eligibility for monthly bonuses or commissions on a sliding scale depending upon reaching the maximum target goal of 100%, and decreasing as the production met less than 100% of the goals, or alternative with some multiplier based upon the production.

26. Defendants' internal records and pay stubbs demonstrate that the additional compensation was classified as a "commission", but Defendants interchangeably referred to and called this additional compensation a bonus as well.

8

27.  Sellers handled primarily the sales of software and cloud applications of the products called Sage 500, accounting type software and cloud applications for what was a targeted class called Mid-Market.

28.  Sellers' territory and accounts also included many companies and professionals in Canada, including in the western time zones.

29.  Plaintiff Bell, also was an Account Manager or Account Executive for Defendant Sage Software, Inc. during the period of October 26, 2015 through April 4, 2016 from the Lawrenceville, Georgia office.  Defendants permitted and as well itself, interchanged the names Account Executive and Account manager to describe the same position under the general label of "telesales".

30.  Bell's primary job duty was to make outbound and handle inbound calls, and call upon an assigned accounts to sell Sage software and cloud applications, including TIMESLIPS to attorneys and law firms, and CPA's and accounting firms, and seek renewals of the software licenses.

31.  Bell also was paid on the same common compensation plan as Sellers, a base hourly pay stated in annualized pay, plus monthly non-discretionary bonuses or commissions based upon meeting maximum level of sales during the month.

9

32.  Sellers and Bell both earned bonuses throughout their employment time with SAGE, which was a substantial component of the overall compensation they and all other sales representatives received for performing their job duties.

33.  Sellers and Bell both routinely worked overtime hours throughout their employment without being paid a premium for these hours, including working through some or all of the allotted lunch break times, commencing work prior to the official scheduled start time and staying later or after the ending shift time.

34.  Sellers, Bell, and all other similarly situated employees are currently now or have previously been covered under FLSA §207.

***The Defendants***

35.  SAGE GROUP, PLC is a United Kingdom (UK), International Corporation conducting business in the U.S. through its North America Corporate office located in Atlanta, Georgia, and is the Parent Corporation of wholly owned subsidiary, co-Defendants, Sage Software, Inc. and Sage Payment Solutions, Inc., publicly traded entity under the symbols of SGGEE and SGPYY and also the parent of wholly owned subsidiary of Sage Software, Inc., and has a principal place of business for all North America at 271 17th Street NW,

Atlanta, Georgia 30363. Defendant may be served through its registered agent for service of process, at Corporate Service Co., 40 Technology Parkway South, Suite #300, Ben Hill, Norcross, Georgia 30092.

36. Upon information and belief, Defendant SAGE GROUP, PLC is a Joint employer within the meaning and definition of the FLSA as it created and enforces the unlawful pay practices complained of as well as manages and oversees the subsidiary co-defendants operations and employment practices at both subsidiary co-defendants from its North American operations offices in Atlanta, Georgia.

37. Defendant, SAGE PAYMENTS SOLUTIONS, INC. is a Foreign, Corporation and wholly owned Subsidiary of SAGE GROUP, PLC based in the United Kingdom, publicly traded entity under the symbols of SGGEE and SGPYY and also the parent of wholly owned subsidiary of SAGE SOFTWARE, INC., and has a principal place of business for all North America at 271 17th Street NW, Atlanta, Georgia 30363. Defendant may be served through its registered agent for service of process, at Corporate Service Co., 40 Technology Parkway South, Suite #300, Ben Hill, Norcross, Georgia 30092.

38. Defendant SAGE SOFTWARE, INC. is a U.S. based, foreign company, and wholly owned subsidiary of SAGE GROUP,

PLC, with principal office located at 1715 N. Brown Road, Lawrenceville, Georgia 30043.    Defendant may be served through its registered agent Corporate Service Co., 40 Technology Parkway South, Suite #300, Ben Hill, Norcross, Georgia 30092.

39. As stated by Defendants on their website: *"Our solutions manage accounting, HR, payroll, payments, assets, construction, real estate, and enterprise systems. They travel with business builders wherever they're needed—in the cloud, on-premise, or both—offering the freedom to work with mobility. Our solutions fit the needs of startup, scale up, and enterprise companies—whether that means staying on top of their finances, empowering their people, or unleashing their power to grow." (www.sage.com)*

40. Defendants sell software and cloud applications for managing:  people and payroll, payment solutions, business management and ERP through various products such as Sage one, Sage x3, Sage 50, Sage 500, Sage Intacct, Sage People etc., as well as Timeslips.

41. Defendants call their office in Atlanta in the Atlantic Station section at 271 17th Street NW, Atlanta GA 30363 area, the North America Headquarters.

42. Sales representatives have transferred between the

offices within the relevant class period of the three years preceding the filing of this Complaint demonstrating the similarity of company policies and procedures and a common unlawful pay practice, and similar job requirements for the sales reps.

43. SAGE is an employer within the definition of the FLSA, as it has revenues exceeding $500,000 annually in all applicable time periods, and is involved in interstate commerce, making sales and collecting payments and credit card transactions across state lines and even across country lines from the Atlanta and Lawrenceville offices among others.

44. Upon information and belief, at peak times within the preceding three years of the filing of this complaint, Defendants employed in the Atlanta and Lawrenceville offices, upwards of 300 or more inside sales representatives.

45. Given turnover, Plaintiffs estimate that the putative class of similarly situated inside sales representatives to be in the range of 600 to 800 persons just from the Atlanta and Lawrenceville offices alone.

46. SAGE was Seller's and Bell's employer within the meaning of 29 U.S.C. § 203(d).

## General Factual Allegations

47.  This collective action arises from an ongoing, longstanding, wrongful scheme by Defendants to willfully underpay and refuse to pay overtime wages to a large class of workers, the inside sales representatives, who Defendant knew, and knows still, routinely worked overtime hours without being paid.

48.  This unlawful pay practice applicable to all inside sales representatives of Defendants was designed to save millions of dollars of labor costs and increase expenses all to the detriment of its inside sales representatives.

49.  Despite being an international, publicly traded corporation, with employees throughout the United State of America, attorney's and general counsel, and having operated in the United States and subject to the requirements of the FLSA for perhaps decades, Defendants have blatantly, and willfully violated the FLSA by: a) failing to institute an actual time tracking and recording system (at least one designated and designed for this purpose) and to which employees could access and see the hours worked; and more importantly, by b) willfully refusing to pay overtime wages when they knew and were aware of employees working overtime hours and understood the FLSA requirements that employers

14

must legally pay non-exempt employees, such as Plaintiffs and the class of similarly situated, a premium for all overtime hours worked.

50. The FLSA does not require employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendants know, or should know, that employees are working overtime hours.

51. Here, Defendants maintain the application of a blind ignorance policy and de facto off the clock policy, and have throughout the preceding three years as well as currently, been aware of inside sales representatives, including Plaintiffs working overtime hours without being paid for all hours worked.

**THE PUTATIVE CLASS**

52. Plaintiffs bring this suit individually, and on behalf of all similarly situated persons composed of the following Class members:

> **A. All employees working as inside sales representatives under the titles of: Account Executive, Account Manager, Business Account Manager, Consultant, Business Development Representative, or any other job title whose primary job duty was inside sales, who are currently employed or were previously employed with Sage**

> **Software, Inc. or other Sage Payment Solutions, Inc. within the U.S. and its territories, within the past three years preceding the filing of this lawsuit.**

53.   At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

54.   Sellers and Bell are able to protect and represent the Collective or putative Class, and are willing and able, and consent to doing so.

55.   Sellers is a proper Class representatives as he was employed by Defendants as an inside sales representatives under the title of Business Account Manager during his employment, and because:   a) he sold SAGE software and cloud applications;   b) has experience dealing with the same unlawful pay practices at other prior employers where he was an inside sales representative;   c) he was paid under the same common pay structure/plan applicable to all other inside sales representatives:   a base hourly rate, with monthly bonuses and treated as exempt under the FLSA, d) he routinely worked overtime without being paid a premium for the hours worked, and e) is familiar with Defendants' policies, procedures and unlawful pay practices.

56.   Plaintiff Bell is a proper class representative as she was employed with Defendant as an Account Manager primarily handling a different product line, TIMESLIPS, was paid on a base salary plus monthly commission or bonus basis, routinely worked overtime without compensation and is familiar with the Defendants' policies, procedures and unlawful pay practices.

57.   Plaintiffs allege for themselves, and on behalf of the class who elect to opt-into this action, that they are entitled to unpaid wages from Defendants for overtime work performed for which they did not receive overtime premium pay, as required by the FLSA.

58.   Defendants employ, upon information and belief and investigation, an estimated 350 or more inside sales representatives working from just the Lawrenceville, and Atlanta offices.  Upon information and belief, Defendants may also now have, or had within the relevant three (3) year class period, employed other sales representatives working from their homes or other offices in other states, which discovery may reveal all as well subject to a single common unlawful pay practice and the same job requirements.

59.   Upon information and belief, the inside sales representatives in the Atlanta and Lawrenceville offices

working under the various titles are all paid under a common pay plan and all were, subject to the same job requirements, and all were performing their job duties in similar manners pursuant to shared company policies and procedures.

60. Similarly, all are inside sales representatives were placed in groups, and assigned a supervisory sales manager to report to, and all inside sales representatives were expected and required to perform their job duties and requirements according to the same national standards and uniform policies and procedures set by the Defendants applicable to all inside sales representatives, aside from any variances due to the specific products or software the sales representatives sold.

61. All inside sales representative within this class are treated as hourly, non-exempt employees without the Defendants ever taking any individualized analysis of the employees' actual work performed under the FLSA testing the application of any exemptions relied upon.

62. Defendants' policy and procedure as explained to Plaintiffs and all other inside sales representatives, was that if they wanted to be paid for overtime hours, they had the obligation to track and record the overtime hours, and they had to submit it to management for payment.

63.  Defendants also advised and warned that overtime work had to be "authorized".

64.  All inside sales representatives were purposefully mislead to believe by Defendant that they were not legally entitled to overtime wages unless: a) they tracked the time and b) made a request for payment, despite the FLSA requirements that employers are obligated to pay its non-exempt employees a premium for overtime hours worked when they know or or should have known of the hours worked.

65.  IRONICALLY, the actual work hours of all the inside sales representatives were never recorded by the Defendants on a time tracing system or software, which the Defendant sells for this same purpose.

66.  Instead, the Defendants tracked the inside sales representatives times through their login and logoff of the telephone system, which Defendants monitored, examined and analyzed on daily, weekly and monthly basis for all inside sales representatives.

67.  In other words, any time Plaintiffs, and all other inside sales representatives worked prior to the scheduled shift time, stayed after the shift time ended, or worked through any meal breaks, Defendant monitored, tracked and was fully aware of all employees exceeding 40 work hours.

68.  Upon information and belief, Defendants paid each employee the same base pay as a salary, regardless of the actual hours worked even when under 40 hours, such as 39 or 38, etc., such that Plaintiffs were under the impression they were treated as salaried employees.

69.  Defendants paid inside sales representatives semi-monthly, or two times per month, and paid out bonuses at the end of the month.

70.  Some inside sales representatives earned more in bonuses than base pay in a month, and others less, but in either case, Plaintiffs and all inside sales representatives were incentivized to work as many overtime hours as possible to maximize their bonuses, which could be the greater part of their compensation for the month.

71.  Thus, although Defendants did not actually have a specific time tracking system, time clock or program just for the purpose of tacking employees work hours, and clearly not one any employee could ever specifically and exactly know when they were reached the 40 hour mark during a work-week such that they would be entitled to overtime pay, through the telephone login system, and other visual assessments, clearly knew who and when employees were  working overtime hours and hours beyond the scheduled shifts.

72.   Plaintiffs, like all inside sales representatives were assigned 40 hour work shifts, some starting at 8:30 a.m. to 5:30 p.m., some at 10:00 a.m. to 7:00 p.m.

73.   Inside sales representatives could not and did not just come and go as they pleased and were subject to discipline if late or left early or took extended breaks during the day.

74.   Defendants operated and managed the inside sales representative in a boiler-room type, highly pressurized and oppressive micro-management style, and assessing their performance based upon minimum number of telephone calls in a day (60 at times), and the overall sales.

75.   The Defendants maintained a company-wide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for inside sales representatives despite, clear knowledge inside sales representatives have worked and continue to work overtime hours and are by law non-exempt employees.

76.   Upon information and belief, all inside sales representatives are supervised by team leaders and other managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as

phone calls and production and report results to the corporate office under a structured, corporate controlled manner.

77.    Defendants operate a micro-management policy for all inside sales representatives, and they are warned weekly and monthly that their failure to meet sales quotas, telephone call quotas places them on immediate disciplinary action and eventual termination of employment.

78.    Defendants constantly pressured, intimidated and coerced Plaintiffs and all inside sales representatives to work as many hours as necessary to meet quotas, and goals, daily telephone call requirements under threats of formal discipline and termination of employment.

79.    Worse, Defendants actually warned Plaintiffs and inside sales representatives against submitting or making any claim for payment for the overtime hours worked, warning them that if they ever made such a claim and they were not at 100% of the sales goals or quotas, they would be subject to discipline.

80.    Thus, neither Plaintiff, nor any other inside sales representatives Plaintiffs were aware of in the years they worked, upwards of 200 or more sales representative working side by side, ever submitted a claim for payment of overtime wages.

81. As stated above, the company did not even have a formalized process for submitting overtime hours, discouraged it, and yet both clearly observed and ratified employees coming in early, working through meal breaks, and staying late without ever being paid a premium for the overtime hours.

82. Thus, Defendants maintained a ***De Facto*** off the clock policy (although there technically was not a time clock system), in which inside sales representatives were told to focus on their bonuses rather than any overtime pay requirements of the FLSA, and placing them in fear of discipline and termination if they ever dared to submit a claim for overtime wages.

83. All were told that overtime hours had to be approved in advance, yet, when Plaintiffs and other inside sales representatives worked over 40 hours, they were not disciplined for doing so despite Defendants monitoring of their login and logout times on the telephone system. Managers did not walk around and tell employees to leave when they hit their 40 hours, or were working late.

84. Plaintiff Sellers had to routinely communicate with customers in the western time zones, and at times, was forced to work until as last as between 10:30 p.m. and 11:00 p.m., many hours beyond his ending shift time.

85. Similarly, Bell who had a shift of 8:00 a.m. to 5:00 p.m., routinely worked without an actual meal break, or very limited one, yet SAGE automatically would deduct time for the breaks.

86. Bell also routinely found it necessary to work after the 5pm schedule to meet her telephone call quotas, and complete sales calls.

87. Inside sales representatives also were expected and encouraged by management to respond to all customer emails even after scheduled business hours and on weekends.

88. Further, at any given time, one or more managers readily observed and could observe inside sales representatives working before and after the scheduled shift time thus placing them on notice of inside sales representatives likely to incur and be entitled to overtime pay. Defendants simply turned a blind eye.

89. At no time during the relevant time period did Defendants formally discipline inside sales representatives for going over 40 hours in a workweek.

90. All inside sales representatives following standardized company policies and procedures applicable to all, and aside from variances in the communications related to the specific products they were selling, all had uniform,

24

standardized and common job requirements for working as inside sales representatives.

91.  The actual job requirements performed by the proposed class of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, whether as Account Managers, Account Executives or any other titles used to describe them. All performed routine jobs who primary job duty was production, attending appointments and making the sales pitches and demonstrations of the product to close the deal and accept the orders or obtain renewals for both assigned accounts any any new leads given to them by management to speak with.

92.  Plaintiffs, as well as the members of the putative class of similarly situated employees, routinely worked through part or all of their lunch breaks, and also performed other work incidental to their job at home.

93.  Many sales calls and demonstrations had to take place in the evening hours to accommodate business owners and their officers, especially those on the western time zones, so as not to disrupt their business during standard daily working hours.

94.  Plaintiff Sellers often made calls and performed demonstrations in the evening hours, many hours after the

daily shift supposedly ended.

95. Pursuant to FLSA §207, Defendants, as the employer of Sellers and Bell and and all other similarly situated employees, was and is required to pay an overtime premium at one and one-half times each employee's regular rate of pay hourly rate for hours worked in excess of forty (40) hours per week, which must include the value of bonuses or commissions earned in the calculations.

96. Defendants clearly knew or should have known, that these inside sales representatives do not satisfy any exemption, specifically: a) they fail the executive exemption as they do not supervise other employees, b) fail the administrative exemption as their primary job duty is sales and production, and does not involved the exercise of discretion and independent judgment in matters of significance affecting the company; and c) clearly are not outside sales representatives or engaged in retail sales; d) are not professionally exempt as the position does not require specialized education and training; e) are not subject to the 13(a)1 highly compensated exemptions because they are not paid on a SALARY basis, and do not regularly perform exempt duties of an executive, administrative or professional employee.

97.  Moreover, having been operating sales departments and numerous offices in the United States, has known of and clearly has been aware of lawsuits against other large companies for not properly compensating inside sales representatives properly pursuant to the FLSA.

98.  Employees in the the Lawrenceville and Atlanta offices had similar standardized nine-hour days applicable to all the inside sales representatives, such as from 8:00 a.m. to 5:00 p.m., or 10:00 a.m. to 7:00 p.m.

99.  The offices did not mandate logging in and out for lunch or meal breaks and the company automatically deducted one hour for breaks regardless of knowledge the employee was working through some or all of their meal breaks and logged into the telephone system.

100. Defendants are fully aware that employees work through lunches, as management can clearly see them doing so and encouraged employees to do this to meet quotas and goals.

101. Defendants do not presently, and have not throughout the relevant three (3) year class period, properly clocked, tracked or recorded the actual working hours of each inside sales representative in all of their offices.

102. All inside sales representatives worked a similar schedule of five (5) days per week, Monday to Friday, shifts

are nine (9) hour days with one hour allotted for lunch or breaks.

103. In order to meet sales quotas and maximize their commission and bonus, Plaintiffs and other sales representatives would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendants.

104. Defendants made known the employees who were not hitting quotas and sales goals and observed numerous employees including themselves being terminated for allegedly not meeting sales goals and quotas.

105. Defendants also were and are aware, that in order for inside sales representatives to meet or his 100% of the goals and quotas, inside sales representatives MUST work over forty hours routinely, and that the position is not a 9:00 a.m. to 5:00 p.m., forty (40) hour per week position.

106. Inside sales representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas.

107. Defendants treated Plaintiffs and the class of similarly situated employees as exempt employees, despite the

fact that were classified as non-exempt and legally required to pay overtime hours worked without and regardless of the employee requesting the overtime pay.

108. Defendants unlawfully placed the onus and obligation on the employee to actually submit and request payment for the overtime hours worked.

109. Defendants' representations and communications to employees about the company's obligations under the FLSA and the employees' rights to overtime pay were false and intentionally misleading, as well as unlawful and unfair, as was the entire de facto overtime policy and failure to track and record on a time keeping system the employees work hours.

110. All insides sales representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices, aside from the variances for the separate product lines.

111. All inside sales representatives attended sales meetings during which the Defendants went over new procedures, policies and sales protocols and was clear to Plaintiffs, applied to all inside sales representatives employed by the Defendants.

112. Defendants should be well aware that the FLSA requires the regular rate of pay calculation to include not

only the base pay, but the bonuses and commissions in the calculation; thus the overtime rates of the Plaintiffs class must be based upon not just the base salary, but the commissions and bonuses as well. *See* FLSA .sections 778.108, 778.117, 778.208, 778.209.

### COUNT I
### FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

113. Plaintiffs allege and incorporate by reference all preceding paragraphs of this Complaint and fully restate and re-allege all facts and claims herein.

114. Defendants have willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all inside sales representatives under the various job titles identified in this complaint as as required pursuant to the FLSA overtime wage provisions during one or more weeks.

115. Plaintiffs and the proposed class Putative Class of similarly situated, comprised of all current and former persons who worked for SAGE as inside sales representatives were denied overtime compensation pursuant to FLSA §207 as required to be paid by Defendants.

116. Defendants do not, and cannot have a good faith basis for failing to pay Plaintiffs and the class of inside

sales representatives overtime pay, particularly here when they knew inside sales representatives were working overtime, and discouraged and placed the obligation upon the inside sales reps to formally make a claim for overtime pay.

117. Further, Defendants were aware and clearly knew Plaintiffs and the inside sales rep position was a non-exempt position, subject to the time tracking requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premium when they knew or should have known such employees worked any time over 40 hours in a work week.

118. Plaintiffs, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one and one half times their regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

119. Defendants knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees, comprised of the Plaintiffs Class in violation of the FLSA and 29 CFR Part 576.

120. Defendants suggested, encouraged and requested that all inside sales representatives work as many hours as they could to meet or exceed sales goals, and have direct knowledge of inside sales representatives working overtime hours yet

willfully chose not to compensate Plaintiffs and the class of similarly situated.

121. Again, the FLSA requires Defendants to pay the overtime wages when they know employees "worked" over 40 hours in any work week, and does not permit an employer to escape or nullify its obligations by placing the duty on the employee for formally submit the hours and make a claim for overtime pay.

122. Regardless, the entire company polices and procedures related to work hours is oppressive, misleading and intended to discourage and prevent inside sales representative from ever making a request or claim for overtime pay due to fear and intimidate of being terminated from employment.

123. Defendants made clear to the inside sales representatives that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened scrutiny, discipline and potentially termination.

124. By failing to record, report, and/or preserve records of hours worked by the Plaintiffs, and the class of similarly situated inside sales representatives, the Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine

their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq.*, including 29 USC Sec. 211(c) and 215 (a).

125. Alternatively, even if Defendants paid Plaintiffs and the class of similarly situated on a salary basis, Defendants knew or should have known that the act of paying Plaintiffs and all inside sales representatives on a salary, exempt basis without overtime pay, is unlawful and evades the wage and hour requirements of the FLSA such that a 3 year statute of limitations applies.

126. Defendants knew and know now, that overtime wages are to be paid at one and one half times the employees' regular rates of pay to include all compensation earned but, as a means to save hundreds of millions of dollars in labor costs, willfully chose to either misclassify the inside sales rep position as exempt or simply chose to institute policies, procedures and practices which both discouraged employees against making a claim for overtime pay and by not themselves paying overtime wages when they knew or should have known employees were working overtime without being paid for all hours worked.

127. Here, Plaintiffs and the inside sales representatives are not technically working "off the clock"

as Defendants never had any time clock, but, Defendants did maintain a de facto unwritten policy which was that any submission or claim for overtime would result in disciplinary action, scrutiny and termination of employment, and that the employees were expected to meet their quotas and goals regardless of the hours necessary or they would be fired.

128. Again, Defendants were well aware that in order to meet quotas and goals, inside sales representatives would have to routinely or even occasionally work overtime hours, and that the inside sales rep position was simply not a forty (40) hour per week job.

129. To summarize, Defendants have willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs and the class of similarly situated employees:  a) willfully withholding payment of overtime wages when they knew or should have known Plaintiffs and the class of inside sales representatives actually worked over 40 hours; b) misleading and falsely advising Plaintiffs that they had to submit claims in order to be paid overtime wages while simultaneously discouraging against doing so, and c) not properly tracking and recording all work hours of inside sales representatives.

130. Alternatively, Defendants have willfully violated

the FLSA by inside sales representatives as exempt in violation of the FLSA, as similarly, no such exemption under the FLSA exist and they did not have a good faith basis for misclassifying any inside sales representative as exempt under the FLSA.

131. Defendants have intentionally refused to notify their employees that it has violated the FLSA by not paying overtime wages in the past, and has intentionally mislead currently employees about their rights under the FLSA as to past overtime wages for overtime hours worked and about entitlement going forward.

132. As a result of Defendants willful violations of the FLSA, Seller and Bell, and the Plaintiff Class, comprised of all other employees similarly situated, have suffered economic damages by Defendants' failure to pay overtime compensation in accordance with FLSA §207 and unlawful pay practices.

133. Due to Defendants' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

134. As a result of Defendants' unlawful acts and pay practices, Sellers, Bell, and the Plaintiff Class, comprised of all other similarly situated employees, have been deprived

of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Torion Sellers and Renee Bell, individually, and on behalf of all other similarly situated past and present inside sales representatives, seek the following the following relief:

a.  Designation of this action as a collective action.

b.  That Sellers and Bell be allowed to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present inside sales representatives employed by SAGE at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.  Designate the Named Plaintiffs as Representatives of the Collective Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.  That all past and present inside sales representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.   That the Court find and declare Defendants in violation of the overtime compensation provisions of the FLSA;

f.   That the Court find and declare Defendants' violations of the FLSA were and are willful;

g.   That the Court enjoin Defendants, under to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class.

h.   That the Court award to Mr. Sellers, and Ms. Bell and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.   That the Court award Sellers, Bell, and the Plaintiffs who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.   That the Court award Sellers and Bell a Class Representative service fee award for the justice they sought out for so many and their services in this case as representatives for the putative class;

k.   That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendants unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.   That the Court Award Pre-judgment and post-judgment interest, as provided by law, and;

m.   That the Court award any other legal and equitable

relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: September 18, 2017

Respectfully submitted by:


_____
MITCHELL L. FELDMAN, ESQUIRE
GA Bar: 257791
**1201 N. Peachtree Street, NE**
400 Colony Square, #200
Atlanta, Georgia 30361
Tele: (877) 946-8293
Fax: (813) 639-9376
E-mail: mlf@feldmanlegal.us
mail@feldmanlegal.us
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on September 18, 2017 I electronically filed this pleading. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the

38

Court's system.

_____
MITCHELL L. FELDMAN, ESQUIRE
GA Bar No. 257791